[Civ. No. 2956.    Third Appellate District.—January 27, 1926.]

## CALIFORNIA CREDIT AND COLLECTION CORPORATION (a Corporation), Appellant, v. WALTER M. RANDALL, Respondent.

[1] FRAUD—PURCHASE OF CORPORATE STOCK—ACTION ON PROMISSORY NOTE—REPRESENTATION AS TO PAYMENT OF DIVIDENDS—DEFENSE.—In an action upon a promissory note given by the defendant to represent a balance due on the purchase price of corporation stock subscribed for by him, the fraudulent representation that the corporation had paid and was paying dividends of twelve per cent, which representation induced the defendant to execute the subscription agreement and note, was a sufficient defense.

[2] ID.—REMEDIES OF DEFRAUDED PARTY.—In such action, the defendant had the right to rely upon fraud as a defense.

[3] ID.—DAMAGES—EVIDENCE.—In such an action, where the defendant does not seek to recover damages, the exact amount of damage need not be shown, provided it be in an appreciable sum; and the fact that the corporation stock may have been worth what the defendant agreed to pay for it is not conclusive upon the question of damages.

[4] ID.—PURCHASE OF PROPERTY THROUGH MISREPRESENTATION—VALUE—DAMAGES.—Where one is induced to buy property by false representations made to him by the owner thereof, the purchaser is entitled to the benefit of his bargain, and hence should recover the difference between what the purchased property was actually

---

1.  See 6 Cal. Jur. 770.
2.  See 12 Cal. Jur. 786.
3.  See 12 Cal. Jur. 766; 12 R. C. L. 390.
4.  See 12 Cal. Jur. 844; 12 R. C. L. 452.

worth and what it would have been worth had the false representations as to its value been true, regardless of the price paid.

[5] ID.—AGENCY—CONTRACTS—PROOF OF FRAUD INDUCING AGREEMENT. In such action, the statement in the subscription agreement that "verbal or other agreements between agents and applicants contrary to the terms of this contract are not authorized and will not be recognized by the company" does not preclude proof of fraudulent representations by which the defendant was induced to execute the agreement and the promissory note.

---

(1, 2) 14 **C. J.**, p. 606, n. 97.    (3) 14 **C. J.**, p. 614, n. 58.    (4) 27 **C. J.**, p. 97, n. 13, 14.    (5) 22 **C. J.**, p. 1217, n. 67.

APPEAL from a judgment of the Superior Court of Sonoma County. R. L. Thompson, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. R. Cunnyngham for Appellant.

Bartlett & McConnell for Respondent.

THE COURT.—The plaintiff brought this action to recover on a promissory note, payable six months after date, given by the defendant to the Virden Packing Company, a corporation, and by that company assigned, after maturity, to the plaintiff for collection. The defendant entered into an agreement with the packing company to purchase ten shares of its capital stock at $100 a share, the par value thereof. He paid $250 on the purchase price and gave the note in suit for the remainder thereof. The agreement contained the following provisions: "It is expressly agreed that no stock is to be issued until the amount of this subscription and note or notes given therefor are paid in full in cash. . . . The subscription contract . . . contains the entire contract between the subscriber and the company and no agent or representative of the company, or any other person, has any power to change or alter the terms of this subscription. . . . Verbal or other agreements between agents and applicants contrary to the terms of this contract are not authorized and will not be recognized by the company." The answer sets up as an affirmative defense that the de-

---

5.  See 12 **Cal. Jur.** 824.

fendant was induced to enter into the contract and to give the note by false representations made by the company's selling agent, E. J. Warner. The only alleged misrepresentation which is material to the questions raised by appellant is "that said stock . . . was then paying . . . twelve per cent dividends." The court found in accordance with the allegations of the affirmative defense and entered judgment in favor of defendant for the cancellation of the agreement and the promissory note and for costs of suit. The plaintiff has appealed from the judgment.

The ten shares of stock were never delivered to defendant and he did not pay any part of the note or receive any dividend upon his stock. The parties stipulated at the trial that, without the defendant's knowledge or consent, the company credited upon the note the amount of a dividend declared by it, the amount of such dividend not being stated in the stipulation. Relative to the alleged representations of the selling agent, the defendant testified as follows: "Q. How did you come to subscribe for that stock? A. On account of the representations they made regarding the value of it and what it paid. Q. Well, what did Mr. Warner state to you about this stock before you subscribed for it? A. Oh, I met him I guess, several times, and he spoke about the investment and said it was paying 12 per cent. I guess I saw him two or three times before I took the stock. Q. He told you the stock was then paying 12 per cent dividend? A. That it had. . . . Q. Did he say anything about what it was paying then? A. As I understood him, he said it was paying then 12 per cent. . . . Q. Did you have any knowledge of stocks? A. I did not. Q. Or of the Virden Packing Company, a corporation? A. No. Q. Or what they owned? A. No. Q. Or anything about the formation of the company? A. Only what they told me. Q. Did you have any information of any kind as to the value of this stock? . . . A. No, I did not. Q. Did you have any knowledge of any facts relating to the resources of the Virden Packing Company, except what you got from Mr. Warner? A. That is all I knew. . . . I didn't know any such company existed. . . . Q. Mr. Randall, did you believe the statements that Mr. Warner made to you about this matter? A. I did. . . . Q. Did you rely on them. A. He was introduced to me by a friend of mine, and I depended on

his statement on that account. Q. Would you have made this note and signed this stock subscription except for those representations? A. No, sir. . . . Q. . . . Was that stock ever issued to you? A. No, sir. Q. Was it ever tendered to you? A. No, sir. . . . Q. . . . About the time it became due, did the company make any demand on you for the payment of the note? A. Yes, sir, they did. Q. Did you answer them? A. Yes, sir. Q. Have you that letter; have you a copy of the letter you sent them? A. No. Q. What did you write them, Mr. Randall? A. I wrote to them that the stock was not what it was represented, had not paid the dividends, and I refused to pay the note. And on that ground, they wrote back and said they were not responsible for the action of the salesman." About twenty months after the note was executed and prior to the commencement of this action, defendant's attorney wrote the company, requesting the return of the note and stating that defendant "will give you any such formal release as you may desire." Relative to dividends declared by the Virden Packing Company, counsel for plaintiff stipulated at the trial as follows: "I cannot stipulate as to the earning, I cannot stipulate to that. But I will stipulate that they have not paid or declared a dividend of 12 per cent or half of 12 per cent. Now, I will make it good and strong, the fact of the matter is, I think they paid two per cent dividends before that time, and I do not think they have ever paid more than two per cent." The defendant is the only witness who testified at the trial and his testimony, therefore, stands uncontradicted.

[1] It appears without conflict that the defendant was induced to execute the agreement and the note by the false representation that the packing company had paid and was paying dividends of twelve per cent. Such fraudulent representation is a sufficient defense. (*Dox* v. *R. E. Lomas Co.*, 29 Cal. App. 718 [156 Pac. 874]; 6 Cal. Jur. 770.)

[2] Appellant contends: "The judgment of the court should be reversed: First: Because a rescission of the contract had not been properly alleged, and there is a total failure of the evidence to support a rescission. Second: The defendant does not plead that he has been damaged in any sum whatsoever, neither is there any evidence of injury." In *Field* v. *Austin*, 131 Cal. 379, 382 [63 Pac. 692, 693],

it is said, quoting from *Toby* v. *Oregon etc. R. R. Co.,* 98 Cal. 498 [33 Pac. 550]: "There are three methods by which, in cases like the present, a party defrauded may obtain relief: 1. Cancellation or rescission, etc.; . . . 2. Affirmative relief by an action to recover compensation for the injury sustained by the fraud of the defendant. . . . 3. Defensive relief, whereby the fraud is set up by way of defense to defeat an action brought to enforce an apparent obligation or liability." "Where no affirmative relief is sought, it is not necessary for him to have exercised an existing right to rescind." (12 Cal. Jur. 786; *Simon Newman Co.* v. *Lassing,* 141 Cal. 174 [74 Pac. 761].) "So long as the plaintiff is permitted to come into court seeking to enforce the agreement, the defendant may allege and prove fraud as a defense. In short, it is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud." (*Estate of Cover,* 188 Cal. 133, 141 [204 Pac. 583, 587].)

The evidence does not show that the earnings of the company were not equal to twelve per cent upon its capital stock or that the stock is not worth the price which defendant agreed to pay for the ten shares thereof. The false representation alleged is not that the company was earning twelve per cent, but that it was "paying . . . twelve per cent dividends." There is a material difference in value, in the estimation of small investors at least, between the stock of a corporation which is actually paying dividends and that of one which is merely earning equivalent profits. The one yields an available income to the owner thereof while the other does not. [3] In a case such as this, where the defendant does not seek to recover damages, "the exact amount of damage need not be shown, provided it be in an 'appreciable' sum." (*Munson* v. *Fishburn,* 183 Cal. 206, 219 [190 Pac. 808, 813].) The fact that the stock may have been worth what the defendant agreed to pay for it is not conclusive upon the question of damages. [4] Where one is induced to buy property by false representations made to him by the owner thereof, the purchaser is "entitled to the benefit of his bargain, and hence should recover the difference between what the purchased property

was actually worth and what it would have been worth had the false representations as to its value been true, regardless of the price paid." (*MacDonald* v. *Roeth,* 179 Cal. 194, 201 [176 Pac. 38, 41] ; *Wood* v. *Niemeyer,* 185 Cal. 526, 532 [197 Pac. 795].)

[5] The statement in the subscription agreement that "verbal or other agreements between agents and applicants contrary to the terms of this contract are not authorized and will not be recognized by the company" does not preclude proof of fraudulent representations by which the defendant was induced to execute the agreement and the promissory note. (*Mooney* v. *Cyriacks,* 185 Cal. 70, 82 [195 Pac. 922] ; *Whiting* v. *Squezlia,* 70 Cal. App. 108 [232 Pac. 986, 988].)

The judgment is affirmed.