[Civ. No. 16591. Second Dist., Div. Two. Nov. 19, 1948.]

ARMAND LeCLERCQ et al., Respondents, v. JOHN MICHAEL et al., Appellants.

Henry E. Kappler for Appellants.

Leonard W. Hamner and Bayard R. Rountree for Respondents.

WILSON, J.—This is an appeal by defendants from a judgment in favor of plaintiffs decreeing the foreclosure of a chattel mortgage executed by defendants on the furniture and fixtures of a restaurant.

Plaintiffs, who are mother and son, were the owners and operators of a restaurant known as "Mother LaClair's Chicken Pie Shop." They listed the business for sale with a broker and in June, 1945, defendants called at the restaurant as prospective purchasers and talked with plaintiff Armand LeClercq. During the conversation, in response to an inquiry as to why he wanted to sell the business, Armand stated it was because he was not a restaurant man, his mother was ill, and neither of them intended to go into the business again.

In July, 1945, defendants entered into a written contract to purchase the business for the sum of $7,500, paying $5,000 down and executing a promissory note in the amount of $2,500 secured by a chattel mortgage on the furniture and fixtures for the balance. Thereupon they went into possession of the restaurant and commenced operating it. In November, 1945, Armand LeClercq, in partnership with one Hayes, opened a restaurant about five blocks from that operated by appellants. The partnership with Hayes, according to the testimony of Armand, was formed about July 1, which was after his conversation with defendants but before the contract to purchase was signed. In January, 1946, defendants learned that Armand was again in business. However, they continued making monthly payments on their note, the last payment having been made in April, 1946. It was not until June 21, 1946, after plaintiffs had pressed them for the balance due on the note, that defendants served notice of rescission of the contract claiming fraud and misrepresentation. This action to foreclose the chattel mortgage was brought by respondents on July 1, 1946. Defendants filed an answer alleging that the note and mortgage had been rescinded upon the ground of fraud and at the same time filed a cross-complaint for rescission and damages upon the same ground. Prior to the time of trial, in March and again in June, 1947, defendants listed the business for sale for $12,000. They received an offer of $8,000 which they rejected.

Defendants contend (1) that the trial court erred in finding that the conduct of plaintiffs did not amount to concealment of a material fact and (2) that defendants are entitled to damages even if it be conceded they are not entitled to rescission.

The misrepresentations of which defendants complain are (1) the statements made by plaintiff Armand LeClercq to the effect that he wanted to get out of the restaurant business and did not intend to reengage in that business, and (2) his failure to inform the defendants at the time the contract of purchase was executed that he had entered into a partnership with Hayes and they intended to open a restaurant in close proximity to that of defendants.

The general rule is that a defrauded party must exercise his election to rescind with reasonable promptness after discovering the fraud. A delay in rescission is evidence of a waiver of the fraud and an election to treat the contract as subsisting. Any acts indicating an intent to abide by the contract are evidence of an affirmance thereof and of a waiver of the right to rescind. (*Ruhl* v. *Mott*, 120 Cal. 668, 677 [53 P. 304] ; *J. I. Case T. M. Co.* v. *Copren Bros.*, 45 Cal.App. 159, 174 [187 P. 772] ; *Cross* v. *Mayo*, 167 Cal. 594, 604-5 [140 P. 283] ; *Frankish* v. *Federal Mortgage Co.*, 30 Cal.App. 2d 700, 708 [87 P.2d 90] ; Civ. Code, § 1691.)

Defendants by their conduct waived any right which they might have had to rescind. They first had knowledge of plaintiff Armand LeClercq's interest in the new restaurant in January, 1946. Thereafter they continued to operate their restaurant, they made four payments on the note and in March and June of 1947 they offered the business for sale, refusing an offer which would have netted them $500 more than they paid for the business.

Defendants contend that fraud is a defense that may be used to defeat the action even though they failed to introduce evidence sufficient to substantiate a judgment in their favor for money damages or for rescission, and cite *California Credit & Collection Corp.* v. *Randall*, 76 Cal.App. 321 [244 P. 958], and *Filice Co.* v. *Walton*, 95 Cal.App. 7 [271 P. 1096], in support of this contention. Both of these cases hold that a defrauded party is not bound to rescind but is entitled to plead the fraud in defense of an action on the contract. As stated above, however, by treating the contract as valid after full knowledge of the facts upon which defendants base their allegations of fraud their conduct constituted a waiver of the fraud and an affirmance of the contract. If a person retains the benefits of a contract and continues to treat it as binding he will be deemed to have waived any fraud and to have elected to affirm the contract. (*Sherratt* v. *Hellman*

*Commercial Trust & Sav. Bank,* 112 Cal.App. 542, 546 [297 P. 582] ; *Cross* v. *Mayo, supra.)*

Defendants maintain that although they may not be entitled to the equitable remedy of rescission they may maintain an action on the contract for damages. Defendants' cross-complaint purports to be an action for rescission and for damages. An action for rescission is based upon a disaffirmance of the contract whereas the action for damages is based on an affirmance thereof. The two remedies are inconsistent, although damages may be prayed for in the event rescission may not be had. (*Davis* v. *Rite-Lite Sales Co.,* 8 Cal.2d 675, 678-9 [67 P.2d 1039].) The allegations in the cross-complaint and the prayer indicate defendants are seeking both rescission and damages. A person claiming to be defrauded by false representations may elect to rescind the contract or to affirm it and claim damages, but he may not do both. (*Hjorth* v. *Bernstein,* 44 Cal.App.2d 561, 564 [112 P.2d 643].)

As for the representations alleged to have been made by plaintiff Armand LeClercq, the trial court found, and plaintiffs admit, that the statements were made. The court found, however, that although defendants relied upon the statements, at the time they were made plaintiffs did not intend to reengage in the restaurant business and they were therefore true; and further, that the representations were not made for the purpose of inducing defendants to enter into the contract of purchase. These findings are supported by the evidence which discloses that the representations were made in response to defendants' inquiry as to why plaintiffs wanted to sell. Defendant John Michael testified he was interested in why plaintiffs were selling because if it was for lack of business he would not be interested and he would want to know why there was no business. Under such circumstances there could be no duty upon the part of plaintiff Armand LeClercq to advise defendants that he had changed his mind and failure to do so did not amount to a false representation.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.