**FIRST ADVANTAGE BACKGROUND SERVICES CORP., a Florida corporation, Plaintiff,**

v.

**PRIVATE EYES, INC., a California corporation, Does 1–10, Defendants.**

**and Related Counter–Claims.**

No. C–07–2424 SC.

United States District Court,
N.D. California.

March 5, 2008.

---

Jeffrey Michael Ratinoff, Buchanan Ingersoll & Rooney LLP, Redwood Shores, CA, Karineh Khachatourian, Buchanan Ingersoll & Rooney LLP, Redwood City, CA, for Plaintiff.

Mark R. Mittelman, Paul Adam Kanter, Law Offices of Mark R. Mittleman A Professional Corporation, Walnut Creek, CA, for Defendants.

*ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIM*

SAMUEL CONTI, District Judge.

## I. *INTRODUCTION*

Now before the Court is a motion by Plaintiff and Counterclaim–Defendant First Advantage Background Services ("First Advantage") to dismiss the Fifth, Sixth, and Seventh causes of action in Defendant–Counterclaimant Private Eyes, Inc.'s ("Private Eyes" or "PEI") First Amended Counterclaim. Docket Nos. 32 ("Motion"), 31 ("1st Am. CC"). Private Eyes opposed the Motion, and First Advantage replied. Docket Nos. 41, 42. Having considered the parties' submissions, the Court hereby GRANTS IN PART and DENIES IN PART First Ad-

vantage's Motion for the reasons set forth below.

## II. *BACKGROUND*

The following summary addresses only those facts alleged in support of Private Eyes' First Amended Counterclaim, without consideration or discussion of the facts presented by First Advantage in its Complaint.

Private Eyes performs background checks, including drug tests, physical exams, and motor vehicle record checks ("MVRs") for employers looking to hire and retain personnel. 1st Am. CC ¶ 1. In 2002, Private Eyes entered into a verbal contract with Coca–Cola Enterprises ("CCE") to perform background checks, including MVR verification on new CCE applicants. *Id.* ¶ 8. Private Eyes was authorized by the verbal contract to subcontract services to third-party vendors. *Id.* On March 29, 2002, Private Eyes entered into a written contract with Employee Information Services ("EIS"), First Advantage's predecessor. *Id.* ¶ 10. After assuming the contract, First Advantage confirmed in writing that it would not use any confidential information it received from Private Eyes to solicit business from CCE. *Id.* ¶ 13, Exs. A, B. First Advantage further promised that it would not disclose any confidential information it learned from Private Eyes to existing or potential customers. *Id.* ¶ 13, Ex. B.

Despite this agreement, Private Eyes alleges that in 2004, First Advantage solicited MVR business from CCE. *Id.* ¶ 14. After learning of this solicitation, rather than terminating the relationship, Private Eyes negotiated with First Advantage and the parties reached a settlement agreement pursuant to which First Advantage would pay Private Eyes $1.80 for every MVR check it conducted for CCE. *Id.* ¶ 17.

In spring 2005, Private Eyes learned that First Advantage was soliciting additional business from CCE, and had been disclosing Private Eyes confidential and proprietary information to CCE. *Id.* ¶¶ 19–20. In September 2006, CCE decided to terminate its relationship with Private Eyes, purportedly because it was unhappy with the quality of work First Advantage had performed as Private Eyes' subcontractor and because it was wary of the friction between First Advantage and Private Eyes. *Id.* ¶ 21.

First Advantage sued Private Eyes in June 2007 alleging a number of claims related to the same general business agreement. *See* Compl., Docket No. 1. Private Eyes filed a Counterclaim, asserting eleven causes of action. *See* Docket No. 12 ("Counterclaim" or "CC"). First Advantage moved to dismiss certain causes of action in the Counterclaim, and the Court granted that motion in part, allowing Private Eyes leave to amend some of the claims. *See* Docket No. 30 ("1st CC Order"). Private Eyes subsequently filed the First Amended Counterclaim, and First Advantage brought the present motion to dismiss.

### III. *LEGAL STANDARD*

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the sufficiency of the complaint. Dismissal pursuant to Rule 12(b)(6) is appropriate if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). When evaluating a motion to dismiss, the court accepts the facts as stated by the nonmoving party and draws all reasonable inferences in its favor. *See Everest & Jennings, Inc. v. Am. Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994).

### IV. *DISCUSSION*

#### A. *Fifth Cause of Action: Intentional Interference With Prospective Economic Advantage*

 Private Eyes' fifth cause of action is for intentional interference with prospective economic advantage. 1st Am. CC ¶¶ 48–55. To prevail on this claim, a plaintiff must show the following elements:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153, 131 Cal. Rptr.2d 29, 63 P.3d 937 (2003) (internal citation and quotation marks omitted). To satisfy the third element of this test—the only element First Advantage challenges here—"a plaintiff must plead and prove that the defendant's acts are wrongful apart from the interference itself." *Id.* at 1154, 131 Cal.Rptr.2d 29, 63 P.3d 937 (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393, 45 Cal. Rptr.2d 436, 902 P.2d 740 (1995)). An act "is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159, 131 Cal.Rptr.2d 29, 63 P.3d 937.

The Court dismissed this cause of action on the previous motion, noting that Private Eyes had failed to "allege an independently wrongful act outside a simple breach of contract." 1st CC Order at 5. Private Eyes amended its counterclaim and alleged three specific wrongful acts as predicates

to this claim. *See* 1st Am. CC ¶ 52. First Advantage argues none of these allegations is sufficient. The Court addresses each in turn.

### 1. *Misappropriation of Trade Secrets*

Private Eyes alleges that First Advantage improperly disclosed Private Eyes' confidential information, including Private Eyes' profit margins, in violation of the California Uniform Trade Secrets Act, California Civil Code section 3426, *et seq.* ("CUTSA"). *See* 1st Am. CC ¶ 52(a). First Advantage argues that this allegation is deficient in three ways: first, Private Eyes fails to adequately plead the existence of a trade secret; second, CUTSA preempts Private Eyes' interference claim; and third, the statute of limitations for a trade secret misappropriation claim has already run.[1] *See* Mot. at 5–6.

■ The Court addresses CUTSA preemption first, as it renders the other two issues moot. First Advantage argues that CUTSA preempts any common law claim that is based on conduct which could support a trade secret claim. Mot. at 6. Private Eyes responds that the California Supreme Court, in *Reeves v. Hanlon*, 33 Cal.4th 1140, 17 Cal.Rptr.3d 289, 95 P.3d 513 (2004), suggested that misappropriation of trade secrets can form the basis of intentional interference claim. Opp'n at 6. The Court reads *Reeves* differently. The defendants in *Reeves* were found to have violated CUTSA for stealing a confidential client list, and found to have committed intentional interference based on wrongful acts including destruction of the plaintiffs' computer files, misappropriation of confidential information, and improper solicitation of plaintiffs' clients. *Reeves*, 33 Cal.4th at 1155, 17 Cal.Rptr.3d 289, 95 P.3d 513. Although the *Reeves* court acknowledged the misappropriation in its discussion of interference, that decision does not foreclose preemption here for a number of reasons. First, nothing in *Reeves* suggests that the defendant there raised the issue of preemption. *See San Jose Constr., Inc. v. S.B.C.C., Inc.*, 155 Cal.App.4th 1528, 1545, 67 Cal.Rptr.3d 54 (2007) (appellate court refused to rule on CUTSA preemption of intentional interference claim where defendant had not raised the issue below). Second, the question in *Reeves* was expressly limited to whether an employer could bring an intentional interference claim against a competitor that

---

1. First Advantage addresses the statute of limitations in a footnote. *See* Mot. at 6 n. 5. Private Eyes calls the Court's attention to this issue by mentioning in **bold text** that First Advantage made the argument in a footnote, only to place substantive argument of its own in a footnote on the same page. *See* Opp'n at 7 & n. 2. Neither footnote is appropriate. A footnote is the wrong place for substantive arguments on the merits of a motion, particularly where such arguments provide independent bases for dismissing a claim not otherwise addressed in the motion.

 The Court can only assume that the parties placed the arguments in question in footnotes because they lacked space in the main text of their briefs. The Court therefore reminds the parties that they are bound to follow this District's Civil Local Rules. Civil Local Rule 3–4(c)(2) governs the formatting of written text. Under that rule, the text of a brief must be double-spaced and may not be smaller than 12–point standard font. The line-spacing requirement has an exception for footnotes; the font-size requirement does not. The use of footnotes to circumvent these rules is improper. Both parties used the full 25 pages allotted in their briefs, and if they had not squeezed their substantive arguments into single-spaced (and in Private Eyes' case, 10–point) footnotes, they would have run out of space. It is counsel's responsibility to prioritize arguments and edit briefs, not the Court's. However, if the parties fail to abide by the Civil Local Rules in future submissions, the Court will take on the editing task by striking any footnote containing substantive argument or any footnote containing text smaller than 12–point standard font.

hired the employer's former at-will employees. *See Reeves*, 33 Cal.4th at 1148, 17 Cal.Rptr.3d 289, 95 P.3d 513. Third, the wrongful acts beyond misappropriation were not in dispute, so the preemption analysis would have had no impact on the court's decision. *See id.* at 1147, 1154–55, 17 Cal.Rptr.3d 289, 95 P.3d 513; *see also PostX Corp. v. Secure Data In Motion, Inc.*, No. C 02–04483 SI, 2004 WL 2663518, **3–4, 2004 U.S. Dist. LEXIS 24260, at *11–13 (N.D.Cal. Nov. 20, 2004) (finding no preemption where unfair competition claim relied on facts not related to trade secret misappropriation).

■ Other than Private Eyes' interpretation of *Reeves*, the existing authority favors preemption. The only other California Supreme Court decision bearing on the issue suggests that following the passage of CUTSA, common law claims based on misappropriation of trade secrets are preempted. *See Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal.4th 215, 224, 127 Cal.Rptr.2d 169, 57 P.3d 647 (2002) (plaintiffs are required to bring common law action for pre-CUTSA misappropriation, and CUTSA action for subsequent misappropriation). California Civil Code section 3426.7(b) identifies three categories of cases—those based on breach of contract, criminal remedies, and anything *not* based on misappropriation of trade secrets—that are not preempted by CUTSA. Courts have interpreted this to mean that all other claims which are based on misappropriation of trade secrets are preempted by CUTSA. *Digital Envoy, Inc. v. Google, Inc.*, 370 F.Supp.2d 1025, 1033–35 (N.D.Cal.2005); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F.Supp.2d 216, 219–20 (D.Del.2004) (applying California law); *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F.Supp.2d 941, 953–54 (N.D.Cal.2003); *Convolve, Inc. v. Compaq Computer Corp.*,

00 CV 5141(GBD), 2006 WL 839022, **6–8, 2006 U.S. Dist. LEXIS 13848, at *24–26 (S.D.N.Y. Mar. 29, 2006) (applying California law).

Here, Private Eyes specifically alleged facts supporting a CUTSA violation in the First Amended Counterclaim. *See* 1st Am. CC ¶ 52(a). As such, this claim is a common law claim based on trade secret misappropriation, and is therefore preempted by CUTSA. The Court need not consider the statute of limitations or the adequacy of Private Eyes' pleading, as neither would affect the preemption ruling, even if Private Eyes prevailed.

### 2. *Breach of Confidence*

In further support of its intentional interference claim, Private Eyes alleges that First Advantage engaged in wrongful conduct by "[i]mproperly disclosing PEI's confidential and proprietary information to CCE in violation of its agreement to maintain the confidential nature of this information, a common law breach of confidence." 1st Am. CC ¶ 52(b). First Advantage asserts two deficiencies with this claim: first, CUTSA preempts this claim; second, the facts alleged give rise to a contract claim, not a tort claim. *See* Mot. at 7. The Court agrees with First Advantage.

■ The facts Private Eyes included in the First Amended Counterclaim in support of its allegation of breach of confidence are identical to those it offered in support of its misappropriation claim. *Compare* 1st Am. CC ¶ 52(a) ("Improperly disclosing PEI's proprietary and confidential information to CCE in violation of [CUTSA]") *with* 1st Am. CC ¶ 52(b) ("Improperly disclosing PEI's confidential and proprietary information to CCE in violation of its agreement to maintain the confidential nature of the information, a common law breach of confidence"). The only difference alleged is the existence of a

contract, which is inadequate to avoid preemption. The intentional interference claim based on these facts is still a common law claim based on facts which would amount to the misappropriation of trade secrets, and is thus preempted by CUTSA for the reasons outlined above. *See supra* Section IV(A)(1).

■ Even without CUTSA preemption, the claim would still fail. The facts alleged in paragraph 52(b), supporting the breach of confidence claim, are nearly identical to the facts alleged in the first Counterclaim, which the Court previously found inadequate. *Compare* 1st Am. CC ¶ 52(b) *with* CC ¶ 52 ("disclosing PEI's confidential and proprietary information despite an agreement not to do so"); *see also* 1st CC Order at 5. The central problem with this claim remains that it alleges nothing beyond a simple breach of contract, which is inadequate to support a claim for intentional interference. *See JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App.4th 168, 181–82, 8 Cal.Rptr.3d 840 (2004) (party to a contract cannot recover on a claim for intentional interference with prospective economic advantage based on conduct that would otherwise amount to a breach of the parties' contract). Private Eyes argues that a claim for breach of confidence is a tort claim, and does not require a contract. Opp'n at 9. It is irrelevant that in some other case, with different pleadings and different facts, a claim for breach of confidence does not require a contract; here, Private Eyes has plead a contract, and has plead the breach of that contract as the basis for its interference claim.

### 3. *Trade Libel*

Private Eyes' final basis for satisfying the third element of its intentional interference claim is that First Advantage committed wrongful conduct by "[e]ngaging in common law trade libel, injurious falsehood, and/or disparagement by falsely stating to CCE that PEI was incompetent to perform the services for CCE and that First Advantage could do a superior job." 1st Am. CC ¶ 52(c). First Advantage argues that this claim falls short of the specificity required for pleading trade libel, that Private Eyes did not adequately plead special damages, and that the specific statements at issue are not actionable.

■ Private Eyes argues that trade libel is distinct from defamation, and that the former does not require the specific pleading that the latter does. Opp'n at 10. "Trade libel is more like unfair competition than true libel and is not actionable as defamation." *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F.Supp.2d 1068, 1081 (C.D.Cal.1998). However, this difference does not diminish the pleading requirements in a trade libel claim. *See, e.g., Eldorado Stone v. Renaissance Stone, Inc.*, No. 04–cv–2562 JM, 2005 WL 5517731, 2005 U.S. Dist. LEXIS 45237, at *10–11 (S.D.Cal. Aug. 9, 2005) (dismissing trade libel claim where plaintiff failed to identify the author or speaker, recipient, time, and location of each allegedly libelous statement); *Films of Distinction*, 12 F.Supp.2d at 1081 n. 8 ("In the Ninth Circuit, a product defamation or trade libel claim must be based on specific statements, and the defamatory character of the language must be apparent from the words themselves.") (citation and internal quotation marks omitted). Nothing in the First Amended Counterclaim gives any indication of who from First Advantage made the allegedly libelous statements, to whom they made those statements, when they made the statements, or what exactly they said. Without this information, the claim is deficient. This alone is sufficient basis to grant the motion.

First Advantage also argues that Private Eyes did not adequately plead special damages. *See* Mot. at 8; *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.,* 12 F.Supp.2d 1035, 1047 (C.D.Cal.1998) ("under California law, 'a cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss.' *Leonardini [v. Shell Oil Co.],* 216 Cal. App.3d [547,] 572, 264 Cal.Rptr. 883 [Ct. App.1990]"). Private Eyes merely alleges that the libelous statements "harmed PEI's business relationship with CCE." 1st Am. CC ¶ 52(c). It does not allege the amount of business it had from CCE prior to First Advantage allegedly making these statements, how much it had after, or the value of the business. Private Eyes alleges a total loss of "$4–5 million" on the intentional interference claim as a whole, including the two preempted acts, but never provides specific damages for the claim based on trade libel. This is the same figure that Private Eyes alleges as total damages for all of its claims. *See* 1st Am. CC ¶ 22. As such, it is impossible to determine what, if any, damage to its relationship with CCE Private Eyes claims to have suffered just as a result of the libelous statements.

Finally, the parties dispute whether the allegedly libelous statements are actionable as trade libel or are protected as opinion under the First Amendment. An assertion of incompetence may be actionable. *See Kahn v. Bower,* 232 Cal. App.3d 1599, 1609, 284 Cal.Rptr. 244 (1991) ("Therefore the statements conveying an imputation of incompetence appear actionable as against the objection that they lack the requisite factual content."). However, in order to determine if the specific statements at issue here are actionable or protected, the Court would need to consider the exact comments in their full context. *See* Opp'n at 10–11; *Overstock.com v. Gradient Analytics, Inc.,* 151 Cal.App.4th 688, 701, 61 Cal.Rptr.3d 29 (2007). By failing to provide the specific details of the alleged trade libel, Private Eyes has also deprived the Court of the details and context necessary to rule on this issue. Private Eyes suggests that the Court cannot reach this question at this stage of the proceedings because the Court is limited to review of the pleadings. It is precisely for this reason, however, that Private Eyes must include adequate detail in the pleadings.

#### 4. *Ruling on Intentional Interference*

To the extent Private Eyes' claim for intentional interference with prospective economic advantage is based on wrongful acts amounting to trade secret misappropriation, the claim is preempted by CUTSA and is therefore dismissed with prejudice. The claim based on common law breach of confidence is dismissed with prejudice. The claim based on trade libel is dismissed without prejudice. Private Eyes may amend its pleading to address the deficiencies described above. Private Eyes may not, in amending its pleading, add new wrongful acts as possible foundations for the intentional interference claim. If Private Eyes chooses to amend the claim, it shall be limited to the claim based on trade libel.

### B. *Sixth Cause of Action: Fraud—False Promise I*

Private Eyes alleges in the Sixth Cause of Action that First Advantage committed fraud by (1) falsely promising in 2002 and 2003 not to solicit business from CCE; and (2) falsely promising in 2003 and 2005 not to disclose Private Eyes' confidential and proprietary information to CCE. 1st Am. CC ¶¶ 56–70. Under California law, a cause of action for fraud

based on a false promise must allege: (1) a material misrepresentation, (2) knowledge of its falsity, (3) intent to defraud or induce reliance, (4) justifiable reliance, and (5) resulting damage. *See Lazar v. Superior Court,* 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996).

■■ In addition to alleging the foregoing elements, a claim for fraud must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). To satisfy Rule 9(b), "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. Cal.,* 236 F.3d 1014, 1019 (9th Cir.2001) (internal quotations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003) (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997)).

### 1. *Promise Not to Solicit CCE Business*

Private Eyes alleges that First Advantage repeatedly promised not to solicit certain business from CCE, beginning when Private Eyes and First Advantage's predecessor, EIS, first entered into a contract. *See* 1st Am. CC ¶ 57, Ex. A. This promise was made in person at an August 2003 meeting, as well as in writing in March 2002 and October 2003. *Id.* ¶ 57(a), Exs. A, B. Despite this promise, First Advantage allegedly solicited the MVR business from CCE in 2004. *Id.* ¶¶ 14, 63. When Private Eyes learned that First Advantage was soliciting the MVR business from CCE, the parties negotiated a settlement, pursuant to which First Advantage would pay Private Eyes a commission of $1.80 for each MVR search First Advantage performed for CCE. *Id.* ¶¶ 16, 17. After purportedly operating under this settlement for approximately one year, Private Eyes learned that First Advantage had not paid the full amount of the commissions due, and was soliciting additional business from CCE. *Id.* ¶¶ 18–19. Private Eyes asserts that the statute of limitations for this claim should be tolled until at least June 2005, when it learned that First Advantage was again soliciting business from CCE. *Id.* ¶¶ 68, 69.

First Advantage challenges this claim on a number of grounds. First, the Court previously held that the 2005 settlement "operates as a bar to reopening the controversy or tolling the statute of limitations." Mot. at 9–10; 1st CC Order at 6. Second, Private Eyes failed to plead justifiable reliance. Mot. at 11. Third, Private Eyes has not alleged the facts necessary for application of equitable estoppel. *Id.* at 12. Finally, First Advantage argues that Private Eyes cannot invoke the doctrine of equitable tolling.

■■ Nothing in the First Amended Counterclaim resolves the central problem the Court previously identified. The parties settled the dispute relating to First Advantage's solicitation of the MVR business from CCE in 2005. *See* 1st CC Order at 6. With regard to the settlement agreement, Private Eyes asserts in its Opposition that First Advantage "falsely represented its intention to make such payments, and in fact did not intend to make such payments after a short period of time." Opp'n at 12. That purportedly false representation may form the basis of a separate claim, but it does not allow Private Eyes to revive a dispute that the parties settled. *See Oakland Raiders v. Oakland–Alameda County Coliseum, Inc.,* 144 Cal.App.4th 1175, 1192–93, 51 Cal. Rptr.3d 144 (2006); *Doran v. N. State*

*Grocery, Inc.,* 137 Cal.App.4th 484, 492, 39 Cal.Rptr.3d 922 (2006). Similarly, Private Eyes asserts that because First Advantage at least partially complied with the settlement terms until June 2005, Private Eyes could not have known First Advantage's promise was false until that time. Opp'n at 12. That may be true with regard to the promise to pay $1.80 per MVR (i.e., the settlement), but not with regard to the original promise not to solicit. Private Eyes knew that the promise not to solicit was false before it entered into the settlement (else there would have been nothing to settle), so the settlement has no bearing on when Private Eyes learned of the solicitation.

 Private Eyes next argues that it has the right to choose between rescission and damages. *Id.* at 13. If Private Eyes were alleging that the promise to pay $1.80 per MVR were fraudulent, this might be the case. *See Engalla v. Permanente Med. Group,* 15 Cal.4th 951, 979, 64 Cal. Rptr.2d 843, 938 P.2d 903 (1997); *but see Le Clercq v. Michael,* 88 Cal.App.2d 700, 702, 199 P.2d 343 (1948) ("A delay in rescission is evidence of a waiver of the fraud and an election to treat the contract as subsisting."). The false promise alleged here is the agreement not to solicit business from CCE. The parties already settled that issue, so Private Eyes cannot raise it again.

However, Private Eyes alleges that after the parties settled the dispute and agreed to payments for the MVR business, it discovered that First Advantage was soliciting other businesses from CCE, violating the non-solicit agreement anew. 1st Am. CC ¶¶ 18–19. In its Motion, First Advantage only addresses the MVR solicitation. On Reply, First Advantage asserts that the statute of limitations for any violation of the non-solicitation agreement began to run as soon as Private Eyes knew about the solicitation of the MVRs, in April 2004. Reply at 9–10.

The Court agrees with First Advantage. The wrongful act alleged in this claim is the making of a false promise, not the solicitation of business from CCE or the breach of a non-solicitation agreement. 1st Am. CC ¶¶ 56–70; *see also Lazar,* 12 Cal.4th at 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (elements of false promise fraud). If First Advantage committed fraud, it did so at the time it made a false promise with the intent that Private Eyes would rely on that promise. If the promise not to solicit business from CCE was not false when made, subsequent solicitation does not make it false, even if that solicitation might support other claims, such as breach of contract. If the promise was false at the time it was made, it is not more false for having been broken repeatedly. Even if the MVR solicitation and the non-MVR solicitation are separate violations of the parties' prior agreement, they do not constitute separate acts of fraud. Private Eyes knew, or had reason to know, that the promise not to solicit was false before it entered into the settlement agreement.

Having considered the issue twice, the Court sees no reason to do so a third time, as no new facts consistent with those in the First Amended Counterclaim could cure this defect. Private Eyes' claim for false promise fraud based on First Advantage's alleged promise not to solicit business from CCE is therefore dismissed with prejudice.

### 2. Promise Not To Disclose Private Eyes' Confidential Information

As a second part of the Sixth Cause of Action, Private Eyes alleges that First Advantage falsely promised not to disclose Private Eyes' confidential and proprietary information to CCE. 1st Am. CC ¶ 57. According to Private Eyes, First Advan-

tage made this promise in writing in October 2003, then broke the promise, and then renewed the promise during a conference call in June 2005. *Id.* ¶ 57(b), Ex. B. First Advantage moves to dismiss this claim because it falls outside the statute of limitations, because it is preempted by CUTSA, and because Private Eyes failed to satisfy the requirements of Federal Rule of Civil Procedure 9(b).

■ The fraud claim accrued as soon as Private Eyes knew, or had reason to suspect, that First Advantage was disclosing confidential information to CCE. *Kline v. Turner,* 87 Cal.App.4th 1369, 1373–74, 105 Cal.Rptr.2d 699 (2001); *Garamendi v. SDI Vendome S.A.,* 276 F.Supp.2d 1030, 1040 (C.D.Cal.2003). As above, the claim here is for making a false promise, not for disclosing confidential information. Thus, the question is when First Advantage made the allegedly false promise, and when Private Eyes became aware of that falsity, not when First Advantage allegedly disclosed the proprietary and confidential information.

Private Eyes alleges it did not learn of the alleged disclosures of confidential information until after June 2004, which would bring its claims within the statute of limitations. 1st Am. CC ¶ 70. On the face of the pleading, that would be sufficient. But First Advantage argues that Private Eyes knew of at least some of the disclosures prior to April 2004, and thus knew of the allegedly false promise at that time. Reply at 15. Specifically, First Advantage claims that because Private Eyes alleges that it learned of the solicitation in April 2004, and subsequently argued that the disclosure of confidential information happened at the same time as the solicitation, that Private Eyes must have known about the disclosure. *See* Mot. at 10; 1st Am.

CC ¶ 16; Opp'n to Mot. to Dismiss CC, Docket No. 25 ("First Opposition") at 2.[2] There is no basis for this conclusion in any of the pleadings or briefs Private Eyes has submitted. That Private Eyes *now* knows the solicitation and disclosure were simultaneous does not necessarily mean it knew this in April 2004. Whether Private Eyes should have known is not something that can be determined solely from the pleadings. The parties will need to offer evidence on this issue either at summary judgment or at trial. *See Kline,* 87 Cal. App.4th at 1374, 105 Cal.Rptr.2d 699 ("Generally, statute of limitations issues raise questions of fact that must be tried; however, when the uncontradicted facts are susceptible of only one legitimate inference, summary judgment is proper."). The Court therefore concludes that the claim for false promise fraud based on the agreement not to disclose confidential information is within the statute of limitations.

■ First Advantage next argues that because the claim is based on disclosure of confidential information, it is preempted by CUTSA. Mot. at 16; Reply at 10. Private Eyes responds that the First Amended Counterclaim alleges disclosure of "confidential and proprietary information" which is not limited to protectible trade secrets. Opp'n at 16–17. First Advantage interprets CUTSA preemption to extend to any common law claim sharing a common nucleus of fact with a CUTSA claim for misappropriation, even if the misappropriated information is not a protectible trade secret. Contrary to First Advantage's arguments, nothing in *Digital Envoy* or *Convolve* supports expanding preemption that far. In *Digital Envoy,* claims sharing an "identical nucleus of facts" with a trade secret misappropriation

**2.** The Court grants First Advantage's Request for Judicial Notice. Docket No. 36.

claim were preempted. 370 F.Supp.2d at 1034–35. The court explicitly distinguished its holding from that of *Postx* because the claims at issue in *Postx* shared facts with a trade secret claim, but also had other, non-identical facts. *Compare id. with PostX,* 2004 WL 2663518, **3–4, 2004 U.S. Dist. LEXIS 24260 at *11–13, . Similarly, *Convolve* only extends its holding to those cases that could have been brought under CUTSA. *See* 2006 U.S. Dist. LEXIS 13848 at *22–26, 2006 WL 839022 ("The California UTSA, like other UTSAs, preempts all claims *based on misappropriation of trade secrets* that are not specifically exempted by its § 3426.7(b) savings clause.") (emphasis added). By its own terms, however, CUTSA only provides remedies for misappropriation of *trade secrets,* not of any confidential information, and defines that term specifically. *See* Cal. Civ.Code. §§ 3426.1(b),(d), 3426.2, 3426.3.

If the confidential information First Advantage allegedly disclosed was in fact a protectible trade secret, the claim will be preempted. At least some of the confidential information in question comprised protectible trade secrets. Private Eyes argued this very point in support of its interference claim. *See supra* Section IV.A.2; Opp'n at 5–6. The confidential information at issue included "pricing information and profit margins", which are protectible trade secrets. 1st Am. CC ¶ 59; *see* Opp'n at 5–6 (citing *Whyte v. Schlage Lock Co.,* 101 Cal.App.4th 1443, 1455–56, 125 Cal.Rptr.2d 277 (2002); *Courtesy Temporary Serv., Inc. v. Camacho,* 222 Cal.App.3d 1278, 1288, 272 Cal.Rptr. 352 (1990)). To the extent the claim is based on these trade secrets, it cannot go forward. However, Private Eyes may continue to pursue the claim for false promise, so long as the confidential information

at the foundation of the claim is not a trade secret, as that term is defined in CUTSA. If, in subsequent pleadings or briefs, or at trial, it is established that the disclosures on which Private Eyes bases this claim were trade secrets, the claim will be dismissed with prejudice.

 Finally, First Advantage asserts that the claim is inadequately pled, both in terms of the specificity required for Rule 9(b) and in terms of the elements of false promise. The Court disagrees. As noted above, *see supra* Section IV.B, the purpose of the Rule 9(b) pleading requirements is to ensure that the pleadings are specific enough to put defendants on notice of precisely what the alleged wrongful conduct is, so that they may prepare a defense. *See Bly–Magee,* 236 F.3d at 1019. Here, Private Eyes has specifically pled the "who, what, when, where, and how" of the allegedly false promise. *Cooper,* 137 F.3d at 627. In an October 8, 2003, letter from Richard Heitzman of First Advantage to Sandra James of Private Eyes, First Advantage agreed that it may not disclose Private Eyes' confidential information to (1) First Advantage employees, unless such disclosure is necessary to complete the parties' transaction; (2) any First Advantage employees for the purpose of providing background checks; (3) any third parties not providing consulting services related to this transaction between the parties; or (4) any third parties, unless they are performing drug screening services on behalf of Private Eyes. *See* 1st Am. CC Ex. B. This detail is sufficient for First Advantage to understand the misconduct it is alleged to have committed.

Addressing the elements of a claim for false promise, First Advantage challenges the allegations of material promise, justifiable reliance, and damages. The Court

considers each in turn. With regard to materiality of the promise, First Advantage claims that nothing in the First Amended Counterclaim supports the conclusion that the promise not to disclose proprietary information in June 2005 was material when made. *See* Mot. at 17; Reply at 10–11.

As a threshold matter, the Court notes the parties' distressing lack of precision in discussing which promises are at issue. The Court focuses, as should the parties, on the claims set forth in the First Amended Counterclaim. The promises underlying the claims for false promise fraud are those made at the outset of the parties' business relationship in 2002 and 2003. *See* 1st Am. CC ¶ 57. The crux of the claim as pled is that First Advantage falsely promised not to solicit business from CCE and not to disclose information to CCE in 2003, and based on those promises, Private Eyes agreed to enter business with First Advantage. Both parties repeatedly stray from these promises in their briefs. Other promises, discussions, and negotiations may be relevant, but do not form the basis of the claims in the pleading. For example, the promise to pay for MVR business after the settlement is not the false promise at the core of the claim—as pled, even if false, it was only a basis for tolling the statute of limitations on the fraud claim. *See* 1st Am. CC ¶ 68. Going forward, the Court encourages the parties to focus on the actual claims.

■ Returning to the question of whether or not Private Eyes has alleged a material promise, the Court finds that it has. Private Eyes bases its claim on the original promise not to disclose, which was made as early as October 2003. *See* Opp'n at 17; 1st Am. CC ¶ 57, Ex. B. Private Eyes clearly alleges that, absent this promise, it would not have entered into the business relationship with First Advantage. 1st Am. CC ¶ 58.

First Advantage next argues that by the June 2005 conference call, Private Eyes was aware of other numerous misrepresentations First Advantage had made, so it was unreasonable to rely on that promise. Mot. at 18; Reply at 11. This argument fails. First, as above, it does not address the actual promise that is the foundation of the claim. Second, Private Eyes explains in the First Amended Counterclaim the basis for its reliance: First Advantage had represented itself as an honest and ethical business partner, and at the time of the reliance, Private Eyes was not yet aware of First Advantage having broken other promises. 1st Am. CC ¶ 62. First Advantage may later provide evidence that the reliance was not justified, but without going beyond the pleading, the claim is adequate.

■ Finally, First Advantage argues that Private Eyes fails to allege damages as a result of its reliance on the promise not to disclose. Mot. at 19. Yet again, the argument focuses solely on the June 2005 reaffirmation of the promise and ignores the original promise which is part of the claim. In the First Amended Counterclaim, Private Eyes alleges that it was harmed by the disclosure of confidential information because CCE used that information to gain concessions from Private Eyes, which diminished Private Eyes' profit margins and cost Private Eyes at least $500,000. 1st Am. CC ¶¶ 64–66.

Private Eyes has adequately pled a counterclaim for fraud based on First Advantage's allegedly false promise not to disclose Private Eyes' confidential and proprietary information.

## C. Seventh Cause of Action: Fraud— False Promise II

 In the Seventh Cause of Action, Private Eyes alleges that First Advantage falsely promised that it would go through Private Eyes to bill CCE. 1st Am. CC ¶¶ 71–80. First Advantage argues that this claim falls short of the Rule 9(b) requirements, that Private Eyes failed to plead all of the elements of false promise fraud, and that the claim is barred by the litigation privilege. The Court agrees that the claim does not satisfy Rule 9(b), and dismisses the claim without reaching the other two issues.

Private Eyes offers the following limited description of the alleged promise in the First Amended Counterclaim:

> In or about October 2006, FIRST ADVANTAGE promised that all services it was then performing for CCE would be billed through PEI. The representation was made by Julie Waters of FIRST ADVANTAGE in an e-mail to Sandra James dated November 10, 2006, wherein she agreed to resume the normal practice of billing for services through PEI, thus allowing PEI to collect a profit on the services, if PEI paid for all outstanding invoices.

1st Am. CC ¶ 72. This paragraph contains the entire description of "the who, what, when, where, and how" of the alleged false promise. *Cooper*, 137 F.3d at 627. This description is far from sufficient.

To begin with, it is internally inconsistent as to whether the promise was made in October or November of 2006. In its Opposition, Private Eyes claims that the representations were made over the course of that two month period. Opp'n at 19. The Court will draw favorable inferences on Private Eyes' behalf, but there must be a limit. Nothing on the face of the pleading describes an ongoing discussion or course of communication. Even if the Court were to infer such a dialog, the Court could not infer the specific details necessary to satisfy Rule 9(b).

Moving from the pleading to the specific email alleged as the basis of the claim, the Court still finds the claim deficient.[3] Attached to the email in question is a letter which states that if Private Eyes pays First Advantage receipts already due, First Advantage is willing to discuss resuming services under the terms of the parties' agreement. *See* Ratinoff Decl. Exs. F, G. Even if the Court were to assume that "resuming our services under the terms of our agreement" meant that First Advantage would bill its services to CCE through Private Eyes (an assumption not actually supported in the pleading), Private Eyes has not alleged that it paid the money due, that the parties had the subsequent discussion, or that First Advantage actually agreed to process its billing in that manner.

Private Eyes asserts that it did not attach the email to its pleading out of fear that the email would be taken out of the context of the ongoing discussions between the parties. Opp'n at 19–20. Essentially, Private Eyes chose to give the Court no context for the allegedly false promise, rather than the full context. Private Eyes

---

3. Where a plaintiff alleges the contents of a document in the complaint, but does not attach the document, the defendant may provide that document to the court, and the court may consider it on a Rule 12(b)(6) motion to dismiss. *See, e.g., Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir.1994). First Advantage has provided the email to the Court as Exhibits F and G to the Ratinoff Declaration.

is responsible for its own pleading. Filling in an entire narrative of facts that supposedly support a claim for fraud is not the responsibility of the Court or First Advantage. Private Eyes correctly notes that Rule 9(b) does not require it to set forth every fact in support of its claim, or to have all of the necessary evidence prior to conducting discovery. However, while discovery may be necessary to provide evidence supporting the claim, discovery should not be necessary for Private Eyes to state, with particularity, what First Advantage supposedly promised.

Private Eyes states that First Advantage "misunderstands" the nature of the Seventh Cause of Action. This is not surprising since it is unclear in the pleading what the Seventh Cause of Action alleges. This same deficiency led the Court to dismiss the claim once before. *See* 1st CC Order at 8. Despite having had the opportunity to fix the ambiguities and allege, with specificity, who promised what to whom, and when, Private Eyes has failed to do so. Rather than supplementing the allegations, Private Eyes removed some facts, added new ones, and alleged that the promise in question was made in a letter that it now admits does not contain the full promise. The Court will not indulge Private Eyes in a third attempt to satisfy Rule 9(b), as doing so might lead to a claim based on an entirely new, third set of ambiguous facts. The Seventh Cause of Action is therefore dismissed with prejudice.

## V. *CONCLUSION*

For the reasons set forth above, First Advantage's Motion to Dismiss Private Eyes' First Amended Counterclaim is GRANTED IN PART and DENIED IN PART. The Court ORDERS as follows:

1. With respect to the Fifth Cause of Action, Private Eyes' claim for intentional interference with prospective economic advantage based on wrongful acts of trade secret misappropriation and breach of confidence is dismissed with prejudice. The claim for intentional interference based on a wrongful act of trade libel is dismissed without prejudice. Private Eyes may amend its pleading no later than thirty days from the date of this order. Private Eyes may not allege a new wrongful act as a basis for this claim.

2. With respect to the Sixth Cause of Action, Private Eyes' claim for false promise fraud based on the promise not to solicit business from CCE is dismissed with prejudice. The claim for false promise fraud based on the promise not to disclose confidential and proprietary information survives, only to the extent that the confidential and proprietary information in question is not a trade secret, as defined in CUTSA.

3. The Seventh Cause of Action for false promise fraud based on First Advantage's promise to bill CCE through Private Eyes is dismissed with prejudice.

IT IS SO ORDERED.